# In the United States Court of Federal Claims

**No. 24-14C**
**Filed: May 3, 2024**

```
* * * * * * * * * * * * * *   *
LISA DEWEESE,                 *
                              *
              Plaintiff,      *
                              *
     v.                       *
                              *
UNITED STATES,                *
                              *
              Defendant.      *
* * * * * * * * * * * * * *   *
                              *
```

Lisa Deweese, <u>pro se</u>, Washington, D.C.

**Nelson Kuan,** Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Corinne A. Niosi**, Assistant Director, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brian M. Boynton**, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C.

## O P I N I O N

<u>**HORN, J.**</u>

### F I N D I N G S   O F   F A C T

On January 2, 2024, <u>pro se</u> plaintiff, Lisa Deweese, filed a complaint and, the same day, January 2, 2024, filed an amended complaint. Plaintiff's original and amended complaint list the United States as the defendant.[1] In response to plaintiff's amended complaint, defendant filed a moved to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(1) (2023) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction.

In her difficult to follow amended complaint, among plaintiff's many allegations and statements, plaintiff states:

Child Protective Services (CPS) are governed by The Administration for Children and Families (ACF), a division of the United States Department of

---

[1] While in her amended complaint, the plaintiff refers to the United States Department of Health and Human Services, the court notes that some of the acronyms used by the plaintiff appear to refer to the New Mexico, Children, Youth, and Families Department.

Health and Human Services (HHS). The CPS agency uses many acronyms for itself. For example, Children, youth, and family (CYF), Department of children and families (DCF), Department of children and family services (DCFS), Department of social services (DSS), Department of human services (OHS), Department of child safety (DC), Department of child services (DCS), and Childrens, Youth and Families Department, to name a few. However, unlike other parts of the government, the CPS department lacks transparency. CPS cases are sequestered, causing one to question what they're hldding and/or keeping secret. The CPS agency has caused the National debt. The CPS agency is resonsible for a majority of the homeless population, both old and young alike. The defendants are also guilty of Treason, Torture, Terrorism, Trafficking and have destroyed this Nation from within. The CPS Department attracts Pedophiles, Luciferians and people who just love money. The CPS agency is responsible for the many babies by foster girls on the black market and the organs of foster children being illegally harvested. And other crimes against humanity.[2]

(footnote added).

Plaintiff alleges she is representing both herself and a class of similarly situated individuals, acting "as Vox Populi,"[3] but under the Rules of the United States Court of Federal Claims plaintiff can only represent herself in the above-captioned lawsuit.[4] Plaintiff has continually tried to file numerous unrelated exhibits with the court. During the pendency of plaintiff's amended complaint, she has attempted to file 76 additional submissions. As none of the submissions complied with the court's Rules, the court instructed the Clerk's Office to reject the 76 submissions. Plaintiff's response to the motion to dismiss plaintiff's amended complaint did comply with the court's Rules and was filed on the court's docket.

---

[2] Capitalization, grammar, punctuation, alterations, abbreviations, spelling, emphasis, and choice of words when quoted in this Opinion are as they originally appear in plaintiff's submissions to this court.

[3] Vox populi means with "popular sentiment or opinion" or "the voice of the people." Vox populi, Merriam-Webster Dictionary (Online), https://www.merriam-webster.com/dictionary/vox%20populi (last visited May 3, 2024).

[4] Pursuant to RCFC 83.1 (2023), a pro se plaintiff cannot represent a class. RCFC 83.1(a)(3) states: "An individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3); see also Brewer v. United States, 150 Fed. Cl. 248, 250 (2020) (citing Balbach v. United States, 119 Fed. Cl. 681, 683 (2015)). Therefore, this court can only review plaintiff's amended complaint with respect to the allegations asserted by plaintiff individually.

Plaintiff's amended complaint tries to allege "Breaches of contracts involving the federal government" pursuant to the Contract Disputes Act, violations of plaintiff's due process rights, and tortious acts by federal, state, and local government officials. Moreover, plaintiff states a series of claims and allegations which conflate breaches of contract and allegations of improper actions by federal, state, and local government agents and individuals. For example, plaintiff offers the following statement:

> The CPS Abuse/Neglect Petitions are not and have not ever been served upon the Parent(s)/Plaintiff(s) as claimed by the Defendants. The Defendants falsely claim that the Plaintiff(s) defaulted and/or plead "No Contest" to the non-penal and non-criminal charges of abuse and neglect listed in the Petitions, that they chose to enter into the Mediation Process and/or safety plan and agreed to "work the treatment plan". Denied due process is a major complaint of the people involved in suspected child/abuse and neglect cases. Trial to deny the charges is not an option in any CPS case. The Plaintiffs are forced into the mediation process either with or without court action. The parents do not have a choose in the matter.

> The Mediation Agreement is a contract in a CPS cases that includes court action and The Safety Plans are contracts involved In CPS cases that do not include court action. These contracts are alleged to have been stipulated to by both parties by the Defendants. However, the contracts were not agreed to by the Plaintiff(s), who were forced to sign them without reading them first and afterwards where not permitted to obtain copies of them. The mediation agreements are read out loud to the Plaintiffs by the CPS agents, who refuse to allow the plaintiffs to read the document along with them at the time of signing. The contracts read as if the Plaintiffs waived their right to trial, that they allow the CPS agency to keep their child{ren) for up to two years, that Defendants can terminate their parental rights and place their child up for adoption. The CPS agents also claim that the Plaintiffs agreed to work the treatment plan after the signing but not beforehand. CPS cases proceed to the Appeals Court after parental rights are slated for termination.

> Safety Plan cases are like Court centered Mediation cases except they lack the oversight of the Court centered mediation cases. and family's members are allowed to act as foster parents instead of strangers.

> Neither type of CPS contract is presented as it is in writing. Verbally, the Petitioners are told something like if the you will agree to go to therapy the we will return the child to you. The CPS charges are presented as E2 and E3 in a Court of law before the Judge.

> There are even CPS cases that do not include any type of contract. These CPS cases involve taking children directly from the home, hospital after

being born or off the street with and/or without the parent(s) knowledge and placed in foster care or np for adoption.

Plaintiff may be trying to allege tortious actions by federal employees by stating:

> Under the FTCA, the federal government acts as a self-insurer, and recognizes liability for the negligent or wrongful acts or omissions of its employees acting within the scope of their official duties. The United States is liable to the same extent an individual would be in like circumstances. The statute substitutes the United States as the defendant in such a suit and the United States—not the individual employee—bears any resulting liability.

Further, according to plaintiff's amended complaint:

> Child(ren) are being forced into Disappearance by the Defendants at an alarming rate and are not allowed to testify in Court. These children come from a diverse population. Many of them citizens of other countries, seeking asylum in the USA. They become beyond the protection of the law at this point and many goes missing soon after being placed in state custody. Possibly due to the fact that members of Satan's Church use the young boys as human sacrifices and the young girls for sacred sex acts.

> Most homeless individuals claim that it is due to CPS unlawful Custodial interference. Parents become homeless as a result of being forced to work the treatment plan in addition to regular fulltime jobs. A failure to comply with CPS case worker demands and other perceived imperfections result in the termination of parental rights. These cases continue to the Appeals Court, usually without much help to the Plaintiffs. The child is a precious resource that is being wasted by the very part of Government assigned to protect them from harm. Legal notices of adoptions by the CPS are made in local newspapers. However, reason for this is not understood.

Plaintiff "seeks a Declaratory, Injunctive and/or Compensatory judgment against the United States." Plaintiff also seeks as relief a "request that this Court will repeal The Children's Code, Abolish the Child Protective Service Divisions, cause that the parent(s) be reunited with their child(ren), that restitution be paid, and for other relief deemed fit just and proper by this Court."

Plaintiff also indicates:

> The Petitioners request that the case be transferred to another court, such as The Supreme Court, under 28 U.S.C. § 1631, if the matter does not pass the test for determining whether a statute or regulation can support jurisdiction in this Court and can be fairly interpreted as mandating compensation, injunction and/or compensatory damages.

Plaintiff appears to have previously filed a Federal District Court claim which included some of the same claims now also presented in the case currently before this court, plus additional claims. See Deweese on behalf of L.H. v. Children's, Youth and Families Dep't, No. CIV 22-0632-JB/KK, 2022 WL 4598479 (D.N.M. Sept. 30, 2022). In the case filed in the District Court for the District of New Mexico, plaintiff alleged, pursuant to 42 U.S.C. § 1983, that:

> On 11-8-2013 my youngest son was sent into CYFD custody by his principal without grounds.
>
> On 11-13-2013 the private process server claimed that I was served the abuse/neglect petition on 11-20-2013 in the children's court. However, this is untrue.
>
> On 12.3.2013 false claims were made that I agreed to the mediation process.
>
> . . .
>
> My right to trial was denied. I was unlawfully detained. My son was overmedicated to the point of death. They acted contrary to the Am religious freedom Restoration Act.
>
> . . .
>
> My parental rights were terminated by a children's court judge without cause and my son was sold to a stranger. He hasn't been allowed to go to his church or have contact with his 3 older brothers.

Deweese on behalf of L.H. v. Children's, Youth and Families Dep't, 2022 WL 4598479, at *1 (omissions in original). The District Court Judge in Deweese on behalf of L.H. v. Children's, Youth and Families Department dismissed the plaintiff's three claims asserted on behalf of herself with prejudice for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), denied her motion to have the defendants served, and dismissed her claim on behalf of her son L.H. without prejudice for failure to state a claim, pursuant to FRCP 12(b)(6). See Deweese on behalf of L.H. v. Children's, Youth and Families Dep't, 2022 WL 4598479, at *7.

On January 25, 2024, defendant moved to dismiss plaintiff's amended complaint currently before this court pursuant to RCFC 12(b)(1) (2023) for lack of subject matter jurisdiction. Defendant argues that plaintiff's "allegations of contract breaches should be dismissed because the alleged contracts from child protective services matters are not money-mandating and because the allegations fail to support the existence of a valid contract with the United States." Defendant further argues that plaintiff's allegations of due process violations and of tortious conduct should be dismissed as the allegations are outside of this court's jurisdiction. Additionally, defendant states that transfer "in this case

would be futile, because it is unclear from the facts alleged in the Amended Complaint that any Federal district court would have jurisdiction over this case."

In response to the motion to dismiss, plaintiff

asserts that the defendant's motion to dismiss for lack of jurisdictional matter should be denied. Plaintiff asserts that when considering policy abuse of process in any proceeding the first thing that we need to look at is that the public interest in the administration of justice requires that the Court protect its ability to function as a Court of Law by ensuring that its procedures are used fairly by State and Citizen alike. The second is that, unless the Court protects its ability so as to function in that way, its failure will lead to an erosion of public confidence by reason of concern that the Court's processes will lend themselves to oppression, abuse and injustice. Systems are broken when they exist to sustain themselves, and the people who run them rely on them to remain the same.

Plaintiff also argues in response to defendant's motion to dismiss:

The US private citizens have been complaining about the collective and collaborative criminal practices and policies of CPS since its beginning. The CPS is torturing the US families and the agents for this agency expect a reward for their crimes against humanity. The United States rules its people with a Totalitarian form of government that permits no individual freedom and that seeks to subordinate all aspects of individual life to the authority of the state and this is contrary to the principle that this nation was founded upon.

Plaintiff's response continues,

[a]n illegal exaction occurs when the government has illegally required a plaintiff to pay money or property to the government or to a third party. An illegal exaction occurs when the government has illegally required a plaintiff to pay money or property to the government or to a third party. As a tax payer, Plaintiff and others like her, take exception to paying the wage of the CPS agents and is reason why she brings this complaint to this Court at this time.

(alteration added). Defendant's reply to the motion to dismiss noted that "Ms. Deweese's response, does not dispute that there is no valid contract between her and the United States," and "[t]he response also does not dispute that the Amended Complaint sounds in tort and that this Court lacks jurisdiction over tort claims." (alteration added; internal reference omitted). Therefore, defendant "requests that the Court dismiss Ms. Deweese's Amended Complaint for lack of subject matter jurisdiction."

**D I S C U S S I O N**

The court recognizes that plaintiff in the above-captioned case is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 575 U.S. 985 (2015). "However, "'[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading.'"'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (third alteration added) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). As stated by the United States Court of Appeals for the Federal Circuit:

> We give pro se plaintiffs more latitude in their pleadings than a party represented by counsel, Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), and we may search the complaint and record "to see if plaintiff has a cause of action somewhere displayed," Ruderer v. United States, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Such leniency, however, does not relieve a plaintiff of jurisdictional requirements. Kelley v. Sec'y, U.S. Dep't of Lab., 812 F.2d 1378, 1380 (Fed. Cir. 1987).

Roman v. United States, 61 F.4th 1366, 1370 (Fed. Cir. 2023). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Hartman v. United States, 150 Fed. Cl. 794, 796 (2020); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))) (alteration added); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))) (alteration added); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court <u>sua sponte</u>." <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing <u>Fanning, Phillips & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998)), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2004), <u>cert. denied</u>, 545 U.S. 1127 (2005); <u>ECC Int'l Constructors, LLC v. Sec'y of Army</u>, 79 F.4th 1364, 1368 (Fed. Cir. 2023); <u>see also St. Bernard Parish Gov't v. United States</u>, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even <u>sua sponte</u>, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing <u>Foster v. Chatman</u>, 578 U.S. 488, 496 (2016)) (alteration added); <u>Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.</u>, 476 F.3d 1329, 1330 (Fed. Cir. 2007); <u>Haddad v. United States</u>, 152 Fed. Cl. 1, 16 (2021); <u>Fanelli v. United States</u>, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2018). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. <u>See United States v. Navajo Nation</u>, 556 U.S. 287, 289-90 (2009); <u>see also Me. Cmty. Health Options v. United States</u>, 140 S. Ct. 1308, 1327-28 (2020); <u>United States v. Mitchell</u>, 463 U.S. 206, 216 (1983); <u>Sanford Health Plan v. United States</u>, 969 F.3d 1370, 1378 (Fed. Cir. 2020); <u>Alvarado Hosp., LLC v. Price</u>, 868 F.3d 983, 991 (Fed. Cir. 2017); <u>Greenlee Cnty., Ariz. v. United States</u>, 487 F.3d 871, 875 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2007), <u>cert. denied</u>, 552 U.S. 1142 (2008); <u>Palmer v. United States</u>, 168 F.3d 1310, 1314 (Fed. Cir. 1999); <u>Gulley v. United States</u>, 150 Fed. Cl. 405, 411 (2020); <u>Kuntz v. United States</u>, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." <u>United States v. Mitchell</u>, 463 U.S. at 216 (omission added); <u>see also United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 472 (2003); <u>Allen v. United States</u>, 88 F.4th 983, 986 (Fed. Cir. 2023) ("The Tucker Act does not create substantive rights, so a plaintiff filing in the Court of Federal Claims 'must identify a separate source of substantive law that creates the right to money damages.' . . . '[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act.'") (quoting <u>Fisher v. United States</u>, 402 F.3d 1167, 1172 and 1173 (Fed. Cir. 2005) (omission added; alterations in original); <u>N.Y. & Presbyterian Hosp. v. United States</u>, 881 F.3d 877, 881 (Fed. Cir. 2018); <u>Smith v. United States</u>, 709 F.3d 1114, 1116 (Fed. Cir.), <u>cert. denied</u>, 571 U.S. 945 (2013); <u>RadioShack Corp. v. United States</u>, 566 F.3d 1358,

1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States.") (alteration and omission added); Olson v. United States, 152 Fed. Cl. 33, 40-41 (2021); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. v United States court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (alterations and first two omissions added); see also Bell v. United States, 20 F.4th 768, 770 (Fed. Cir. 2021); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed.

Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2021); Fed. R. Civ. P. 8(a)(1), (2) (2023); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)); Bd. of Supervisors of Issaquena Cnty., Miss. v. United States, 84 F.4th 1359, 1364 (Fed. Cir. 2023) ("To survive a motion to dismiss, 'the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."'") (quoting A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007))). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (alteration added); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555) (first alteration added).

     Defendant asserts that

     the Amended Complaint appears to suggest that the underlying child protective services matter took place in New Mexico state courts. See Am. Compl. at ¶ 4.I (referring to "The Honorable Nancy Franchini in the Second Judicial District Court of Bernalillo County, Albuquerque New Mexico for any and all exhibits, disclosure and/or Discovery related to this matter"). Nothing in the record allows an inference that any Federal Government agency or employee was involved in Ms. Deweese's matter in the New Mexico state courts.

The United States Supreme Court has indicated, for suits filed in the United States Court of Federal Claims and its predecessors, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588 (1941); see also Cox v. United States, 105 Fed. Cl. 213, 216, appeal dismissed, 12-5108 (Fed. Cir. 2012); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003). "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. at 585; Stephens v. United States, 166 Fed. Cl. 598, 604 (2023) ("Because Plaintiff's Complaint plainly seek[s] relief against an entity or entities other than the United States,

this Court lacks jurisdiction pursuant to 28 U.S.C. § 1491(a).") (citing United States v. Sherwood, 312 U.S. at 588) (alteration added); see also Redd v. United States, 147 Fed. Cl. 602, 607 (2020); Wolffing v. United States, 144 Fed. Cl. 626, 637 (2019); accord RCFC 10(a) (2023). When "claims are against a state governmental entity and are not 'against the United States,' the Court of Federal Claims does not have jurisdiction over them." Sounders v. South Carolina Pub. Serv. Auth, 497 F.3d 1303, 1308 (Fed. Cir. 2007) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995); Weir v. United States, 141 Fed. Cl. 169, 177 (2018) (The court "lacks jurisdiction 'over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees.'") (quoting Anderson v. United States, 117 Fed. Cl. 330, 331 (2014)); Kennedy v. United States, 138 Fed. Cl. 611, 618 (2018), appeal dismissed, 748 F. App'x 335 (Fed. Cir. 2019). This court also lacks jurisdiction over claims against private parties. See United States v. Sherwood, 312 U.S. at 588; Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.") (citing Stephenson v. United States, 58 Fed. Cl. at 190); see also Woodson v. United States, 89 Fed. Cl. 640, 649 (2009). Further, RCFC 10 states that the "title of the complaint must name all the parties (see RCFC 20(a)), with the United States designated as the party defendant." RCFC 10(a). Therefore, the court must conclude that this court lacks jurisdiction to review plaintiff's claims that are against any state or local government entities or individual employees, including the New Mexico Children, Youth and Families Department.

Defendant argues that plaintiff's "allegations of contract breaches should be dismissed because the alleged Mediation Agreements and Safety Plans are not money-mandating," and, therefore, jurisdiction on the basis alleged by plaintiff is lacking. Defendant argues that the "Tucker Act only waives sovereign immunity for claims premised on sources such as contracts that 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" (quoting Ivaldy v. United States, 123 Fed. Cl. 633, 635 (2015), aff'd, 655 F. App'x 813 (2016)). Defendant states:

> The alleged contracts in this case are Mediation Agreements and Safety Plans in child protective services (CPS) matters. ECF 6 (Am. Compl.) at ¶ 4.C ("The Mediation Agreement is a contract in [] CPS cases that includes court action and The Safety Plans are contracts involved in CPS cases that do not include court action."). According to the Amended Complaint, such contracts involved only non-monetary requirements. See id. ("The contracts read as if the Plaintiffs waived their right to trial, that they allow the CPS agency to keep their child(ren) for up to two years, that Defendants can terminate their parental rights and place their child up for adoption. The CPS agents also claim that the Plaintiffs agreed to work the treatment plan after the signing but not beforehand."); id. at ¶ 4.D ("Safety Plan cases are like Court centered Mediation cases except they lack the oversight of the Court centered mediation cases[,] and family's members are allowed to act as foster parents instead of strangers."); id. at ¶ 4.E ("Verbally, the Petitioners

are told something like if [] you will agree to go to therapy the[n] we will return the child to you."). Nothing in these allegations can be fairly interpreted as mandating compensation by the Federal Government for the alleged damages sustained.

(alterations in original). Moreover, defendant asserts,

a lack of mutuality of intent to contract is apparent in the allegation that "the contracts were not agreed to by the Plaintiff(s), who were forced to sign them without reading them first and afterwards [w]ere not permitted to obtain copies of them." Likewise, the allegation that "[n]either type of CPS contract is presented as it is in writing" implies that there was no clear offer and acceptance.

(citations omitted; alterations in original). Defendant continues, "[m]ost critically, the Amended Complaint fails to show that any government representative with actual authority to bind the Federal Government agreed to contract with Ms. Deweese on the Federal Government's behalf." (alteration added). In addition, plaintiff's contract allegations appear also to allege complaints with State court and State agency actions, and are not breaches of an actual contract with a federal agency or federal entities or federal personnel. As noted above, to the extent plaintiff raises claims against State officials, it is well established that the United States Court of Federal Claims lacks jurisdiction to hear claims against private parties or state or local officials, who are not federal employees. See United States v. Sherwood, 312 U.S. at 588.

Furthermore, regarding plaintiff's breach of contract claims, according to RCFC 9(k), "[i]n pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies. In lieu of a description, the party may annex to the complaint a copy of the contract or treaty, indicating the relevant provisions." RCFC (9)(k) (2023). Explaining this requirement, a Judge of the United States Court of Federal Claims has stated:

Even when a plaintiff properly alleges a contract with the government, the Court of Federal Claims cannot exercise its jurisdiction unless the plaintiff also satisfies the pleading requirements set forth in RCFC 9(k). See, e.g., Baha v. United States, 123 Fed. Cl. 1, 5 n.4 (2015) ("Satisfaction of RCFC 9(k) is a jurisdictional requirement."); see also Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 766 (2014) ("If a plaintiff fails to comply with RCFC 9(k) and to allege sufficient facts to show that it had a contract with the United States, the court cannot exercise jurisdiction over the claim."); Kissi v. United States, 102 Fed. Cl. 31, 35 (2011) (finding no jurisdiction based on the plaintiff's failure to show an existing contract and failure to "adequately plead a contract claim under RCFC 9(k)"), aff'd per curiam, 493 F. App'x 57 (Fed. Cir. 2012). RCFC 9(k) requires a party, "[i]n pleading a claim founded on a contract," to "identify the substantive provisions of the contract . . . on which the party relies." A plaintiff that

attaches a copy of the alleged contract to the complaint and "identif[ies] the provisions and terms of the contract that have been breached" satisfies its burden under RCFC 9(k) because doing so allows the court to "render a decision . . . know[ing] the relevant terms of the contract." Garreaux v. United States, 77 Fed. Cl. 726, 730 (2007), quoted in Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010).

Christy, Inc. v. United States, 141 Fed. Cl. 641, 661 (2019), aff'd, 971 F.3d 1332 (Fed. Cir. 2020), cert. denied, 141 S. Ct. 1393 (2021) (omission and alterations in original); see also Bell v. United States, 145 Fed. Cl. 378, 388 (2019) ( "It is well-established that to pursue a breach of contract action in this Court, plaintiffs must establish the existence of a contract with the government and plaintiffs must also identify the substantive provisions of the contract upon which they rely.") (citing D & N Bank v. United States, 331 F.3d 1374, 1377 (Fed. Cir. 2003); RCFC 9(k)), aff'd, 20 F.4th 768 (Fed. Cir. 2021); Rohland v. United States, 136 Fed. Cl. 55, 67 (2018). As also stated by a Judge of this court, "[a]n express contract "'must be manifested by words, either oral or written, which contains agreement and/or mutual assent."'" Frankel v. United States, 118 Fed. Cl. 332, 335 (2014) (alteration added) (quoting Essen Mall Props. v. United States, 21 Cl. Ct. 430, 439 (1990), aff'd, 842 F.3d 1246 (Fed. Cir. 2016) (quoting Webster University v. United States, 20 Cl. Ct. 429, 433 (1990))). The United States Court of Appeals for the Federal Circuit has stated that the required elements to demonstrate an express or implied contract are: "(1) mutuality of intent to contract; (2) consideration; [ ] (3) lack of ambiguity in offer and acceptance," and (4) "[t]he government representative whose conduct is relied upon must have actual authority to bind the government in contract." City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991)) (alterations added).

In the above-captioned case, plaintiff's amended complaint fails to plausibly allege facts that demonstrate the existence of a contract, or more particularly a contract with the United States which has been entered into by a federal employee with the authority to bind the government. In addition, plaintiff herself states that the contracts to which she refers to "were not agreed to by the Plaintiff(s), who were forced to sign them without reading them first and afterwards where not permitted to obtain copies of them." Plaintiff's amended complaint does not allege any of the required elements to form a contract with the United States discussed by the Federal Circuit, for example, in City of Cincinnati v. United States, 153 F.3d at 1377, mutuality of intent to contract, consideration, lack of ambiguity in offer and acceptance, and the authority of the federal representative entering into the contract to bind the government. Plaintiff's breach of contract claims, therefore, must be dismissed pursuant to RCFC 12(b)(1).

In plaintiff's amended complaint, plaintiff also tries to allege various allegations of tortious conduct by government officials, including forced disappearances, custodial interference, and forced work under treatment plans to support her claims under the Federal Tort Claims Act. Defendant, however, correctly points out that "[t]he tort claims in the Amended Complaint are outside of this Court's jurisdiction and should be dismissed." (alteration added) The Tucker Act specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. §1491(a) ("The United States

Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.") (emphasis added); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Allen v. United States, 88 F.4th at 986; Rick's Mushroom Serv. Inc., v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims." (alteration in original)), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Weir v. United States, 141 Fed. Cl. 169, 177 (2018) (citing 28 U.S.C. § 1343(a)(4)) (only federal district courts possess jurisdiction over claims alleging civil rights violations); Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort . . . .") (alteration and omission added); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . The Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort.") (alteration and omission added); Reid v. United States, 95 Fed. Cl. 243, 249 (2010) (plaintiff's invasion of privacy claims dismissed for lack of jurisdiction); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims."), aff'd, 385 F. App'x 987 (Fed. Cir. 2010) (alteration added); Mendes v. United States, 88 Fed. Cl. 759, 762 (2009) (plaintiff's claim for invasion of privacy is a tort claim which this Court lacks jurisdiction); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009). Plaintiff's allegations of tortious conduct by the United States are claims sounding in tort, and, therefore, all are not within the jurisdiction of this court to review.

Additionally, plaintiff may be trying to allege due process violations, but she does not reference the United States Constitution, or a specific amendment to the United States Constitution, stating that being "[d]enied due process is a major complaint of the people involved in suspected child/abuse and neglect cases." (alteration added). Defendant argues that plaintiff's "allegations of due process violations should be dismissed because the due process provisions in the Constitution are not money-mandating," and, therefore, are also not within the jurisdiction of the United States Court of Federal Claims. The United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (concluding that the United States Court of Federal Claims has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at

14

1028)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007) (alteration added); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995) (alteration added); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Ali-Bey v. United States, 169 Fed. Cl. at 734; Gulley v. United States, 150 Fed. Cl. 405, 416 (2020) ("In particular, the due process clause of the [United States] Constitution and 42 U.S.C. § 1983 (both of which [plaintiff] cites in his Complaint) are not money mandating sources of law.") (citing Harris v. United States, 868 F.3d 1376, 1381 (Fed. Cir. 2017) (quoting In re United States, 463 F.3d at 1335 n.5)) (alterations added); Vondrake v. United States, 141 Fed. Cl. 599, 602 (2019) (citing Smith v. United States, 709 F.3d at 1116); Weir v. United States, 141 Fed. Cl. 169, 177 (2018); Maehr v. United States, 139 Fed. Cl. 1, 3-4 (2018) (stating that Smith v. United States, 709 F.3d at 1114, "remains controlling law today"), aff'd, 767 F. App'x 914 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 49, reh'g denied, 140 S. Ct. 566 (2019); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (citing LeBlanc v. United States, 50 F.3d at 1028); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. at 238. Due process claims "must be heard in District Court." Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012). Although it is unclear from the amended complaint filed in the above-captioned case whether plaintiff in fact asserts due process violations under the Fifth Amendment or Fourteenth Amendment to the United States Constitution, or just mentions due process in her amended complaint, neither amendment can obligate the United States to pay money damages, and thus, cannot serve as the basis for jurisdiction in the United States Court of Federal Claims. Therefore, this court does not have jurisdiction over any possible due process claims plaintiff may be trying to assert, and plaintiff's due process claims must be dismissed pursuant to RCFC 12(b)(1).

Finally, plaintiff states:

The Petitioners request that the case be transferred to another court, such as The Supreme Court, under 28 U.S.C. § 1631[5], if the matter does not

---

[5] Section 1631 of Title 28 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court [listed in section 610] and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest

pass the test for determining whether a statute or regulation can support jurisdiction in this Court and can be fairly interpreted as mandating compensation, injunction and/or compensatory damages.

(footnote added). Plaintiff argues that:

> Jurisdictional defects that arise when a suit is filed in the wrong federal district may be cured by transfer under the federal transfer statute, 28 U.S.C. § 1631, which requires a court to transfer such an action "if the transfer is in the interest of justice." However, she asserts that transferring the matter would indeed be in the highest good of all. Furthermore, Plaintiff argues that The US Supreme Court would accept the cause with great enthusiasm. The Court of Federal Claims is authorized to hear primarily money claims founded upon the Constitution, federal statutes, executive regulations, or contracts, express or implied in fact, with the United States and this Petition falls within this venue.

> The petitioner's complaint should not be dismissed until discovery is complete, without a hearing on the issues and/or at the very least a summary judgement regarding transfer to a higher Court, such as the US Supreme Court. The Supreme Court of the United States is the highest court in the land and the only part of the federal judiciary specifically required by the Constitution. Its primary concern is "EQUAL JUSTICE UNDER LAW."

---

of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (2018) (alteration added). Section 610 of Title 28, referenced in 28 U.S.C. § 1631, provides:

> As used in this chapter the word "courts" includes the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade.

28 U.S.C. § 610 (2018).

16

Plaintiff further argues:

> Because the Tucker Act itself provides the waiver of sovereign immunity
> and the right to a court remedy, the Supreme Court explained in <u>United
> States v. White Mountain Apache Tribe</u>, 537 U.S. 465 Transfer under 28
> U.S.C. § 1631 in this case would be not futile, because it is clear from the
> facts in the Amended Complaint that whenever a civil action is filed in a
> court as defined in section 610 of this title or an appeal, including a petition
> for review of administrative action, is noticed for or filed with such a court
> and that court finds that there is a want of jurisdiction, the court shall, if it is
> in the interest of justice, transfer such action or appeal to any other such
> court (or, for cases within the jurisdiction of the United States Tax Court, to
> that court) in which the action or appeal could have been brought at the time
> it was filed or noticed, and the action or appeal shall proceed as if it had
> been filed in or noticed for the court to which it is transferred on the date
> upon which it was actually filed in or noticed for the court from which it is
> transferred.

In response, defendant argues, 28 U.S.C. § "1631 allows only transfers to a court
as defined in [28 U.S.C. §] 610. The definition of a "court" in [28 U.S.C. §] 610 does not
include the [United States] Supreme Court. <u>See</u> 28 U.S.C. § 610 . . . . Accordingly, [28
U.S.C. §] 1631 does not allow transferring [plaintiff's] case to the Supreme Court."
(alterations and omission added; citation omitted). Defendant is correct that the United
States Supreme Court is not a court listed in 28 U.S.C. § 610 and, therefore, this court
cannot transfer a case, including the case currently before the court filed by the plaintiff,
to the United States Supreme Court under 28 U.S.C. § 1631. <u>See</u> <u>Sharpe v. United
States</u>, 112 Fed. Cl. 468, 478 (2013) ("Although the courts to which transfer is permissible
include the United States district courts, they do not include the Supreme Court.") (citing
28 U.S.C. §§ 610, 1631).

Plaintiff argues that if the "court finds that there is a want of jurisdiction, the court
shall, if it is in the interest of justice, transfer such action or appeal to any other such
court." As stated by a Judge of the United States Court of Federal Claims, transfer to
another court is appropriate if the transferor court lacks jurisdiction to proceed; the action
could have been brought in the transferee court when it was filed; and only if transfer is
in the interest of justice. <u>Walker v. United Sates</u>, 168 Fed. Cl. 171, 178 (2023) (quoting
<u>Zoltek Corp. v. United States</u>, 672 F.3d 1309, 1314 (Fed. Cir. 2012) (citing 28 U.S.C.
§ 1631)). The United States Court of Appeals for the Federal Circuit has stated:

> The phrase "if it is in the interest of justice" relates to claims which are
> nonfrivolous and as such should be decided on the merits. Frivolous claims
> include "spurious and specious arguments" and "distortion and disregard of
> the record and opposing authorities, [which] indicate plainly that the present
> appeal does not rest on the razor's edge of frivolity, but falls clearly on the
> side of the frivolous." Other circuits have succinctly defined frivolous claims
> or appeals as those which involve "legal points not arguable on their merits,"

or those whose disposition is obvious. In the language of courts, frivolity does not imply levity, and is not inconsistent with a litigant's belief that he has been wronged and ought to have a remedy.

<u>Galloway Farms, Inc. v. United States</u>, 834 F.2d 998 (Fed. Cir. 1987) (alteration in original; citations omitted). In the above-captioned case, plaintiff's amended complaint has failed to state a claim, with sufficient allegations or facts, ripe for adjudication in a federal court, to warrant transfer in the interest of justice to another federal court.

# C O N C L U S I O N

For the foregoing reasons, this court is without jurisdiction to review any of plaintiff's claims. The defendant's motion to dismiss is **GRANTED**. Plaintiff's amended complaint is **DISMISSED**, without prejudice. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**